STATE OF MAINE
ANDROSCOGGIN, ss.

RECEIVED & FILED

JUN 2 4 2015

ANDROSCOGGIN
SUPERIOR COURT

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-14-5

MICHAEL ASSELIN,

Petitioner,

**ORDER ON PETITIONER'S
RULE 80C APPEAL**

v.

MAINE UNEMPLOYMENT
INSURANCE COMMISSION,

Respondent.

This matter is before the court on Petitioner Michael Asselin's Rule 80C appeal of the

Maine Unemployment Insurance Commission's ("the Commission") decision to temporarily

disqualify Mr. Asselin from receiving unemployment benefits pursuant to 26 M.R.S. § 1194(2).

*See* 26 M.R.S. § 1194(8); 5 M.R.S. § 11001 *et seq.*; M.R. Civ. P. 80C. The Commission affirmed

the Administrative Hearing Officer's finding the Petitioner to be temporarily disqualified from

receiving unemployment benefits, because his termination was the result of misconduct related

to his work. This Court held a hearing on this matter on February 4, 2015.

## BACKGROUND

Petitioner was a cook for his employer, a long-term nursing home, from November 30,

2010 until he was terminated on July 17, 2013.

In the events leading up to termination, the Petitioner was arrested on Saturday, July 13,

2013 on suspicions of operating under the influence and was subsequently incarcerated. The

Petitioner called his brother from jail and asked his brother to notify his employer that he would

1

not be able to work on Sunday, July 14 because of his incarceration. The brother spoke with the employer on July 13, informing it that the Petitioner was incarcerated and that he did not know when the Petitioner would be released. (R. 4) The Commission found that the brother placed a second call on July 17th—the date that Petitioner was fired. (R. 4)

The Petitioner was scheduled to work from the 14th through the 18th, but did not attend work on those days. The employer fired him on July 17th for being unable to work his scheduled shifts. The employer mailed the Petitioner's termination letter to his home address on July 19, 2013.

After a non-testimonial hearing, the Commission found that the employer had met its burden for showing that the Petitioner was terminated due to misconduct.[1] The Commission explained:

> The evidence demonstrates a culpable breach of the claimant's duties and obligations to the employer. The employer reasonably expected that the claimant would be available to work his scheduled shifts at work. The claimant's conduct in failing to appear for work on three consecutive days constitutes misconduct. The employer expected the claimant to appear in a timely manner to work his shifts and the employer's expectation was reasonable because such an expectation should be inferred to exist from common knowledge.
>
> The claimant was in a position to have others communicate on his behalf from jail and his brother did in fact communicate with the employer to some extent. However, one call prior to missing work on July 14th and a second call after two additional missed days combined with no information about the claimants' [sic] estimated date of release was not sufficient notice of the absence. At no time between July 13th and July 17th did the claimant communicate to the employer when he would return to work.

(R. 5)

Petitioner timely appealed the Commission's decision.

---

[1] The Commission based its decision on different grounds than the Administrative Hearing Officer had based his decision. The Commission determined that the AHO had made a mistake by focusing his decision on the circumstances of the arrest, and not the narrower circumstances of the Petitioner's absence from work and failures to appropriately notify his employer.

2

## DISCUSSION

### Standard of Review

In its appellate capacity, the court reviews agency decisions for "abuse of discretion, error of law, or findings not supported by the evidence." *Rangeley Crossroads Coal. v. Land Use Reg. Comm'n*, 2008 ME 115, ¶ 10, 955 A.2d 223. When the court reviews a Commission decision the court "examine[s] the record to determine whether any competent evidence supports the Commission's findings, as well as to determine whether the Commission has applied the applicable law." *Bean v. Maine Unemployment Ins. Comm'n*, 485 A.2d 630, 632–33 (Me. 1984). The burden of proof is on the petitioner to prove that "no competent evidence supports the [agency's] decision and that the record compels a contrary conclusion." *Bischoff v. Maine State Ret. Sys.*, 661 A.2d 167, 170 (Me. 1995). "Inconsistent evidence will not render an agency decision unsupported." *Id.* "Judges may not substitute their judgment for that of the agency merely because the evidence could give rise to more than one result." *Gulick v. Bd. of Envtl. Prot.*, 452 A.2d 1202, 1209 (Me. 1982).

The court must give great deference to an agency's construction of a statute it is charged with administering. *Rangeley Crossroads Coal.*, 2008 ME 115, ¶ 10. "A court will 'not vacate an agency's decision unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or an error of law; or is unsupported by the evidence in the record.' " *Kroeger v. Dep't of Envt'l Prot.*, 2005 ME 50, ¶ 7, 870 A.2d 566.

### Analysis

Generally, a person who has been discharged from employment can receive unemployment benefits, subject to the eligibility conditions of 26 M.R.S. § 1192. The statute

3

provides, however, that an individual is temporarily disqualified from receiving unemployment benefits when "the individual has been discharged for *misconduct* connected with the individual's work." 26 M.R.S. § 1193(2) (emphasis added). Misconduct is defined as "a culpable breach of the employee's duties or obligations to the employer or a pattern of irresponsible behavior, which in either case manifests a disregard for a material interest of the employer." *Id.* § 1043(23). "The following acts or omissions are presumed to manifest a disregard for a material interest of the employer: (3) Unreasonable violations of rules that should be inferred to exist from common knowledge or from the nature of the employment." *Id.* § 1043(23)(A)(3). The employer bears the burden of proving that the employee engaged in misconduct. *Sprague Electric Company v. Maine Unemployment Insurance Com'n*, 536 A.2d 618, 619 (Me. 1988).

To determine that an employee was discharged for misconduct pursuant to the statute the Court evaluates whether "(1) the employer [had a] reasonable standard for discharge and (2) the employee...acted unreasonably in failing to meet that standard. The employee's behavior is measured as the objective manifestation of [his] intent." *Forbes-Lilley v. Me. Unemp't Ins. Comm'n*, 643 A.2d 377, 379 (Me. 1994). According to the Law Court, "the statute sets a rule of reason, to be objectively applied based on the totality of the circumstances." *Moore v. Maine Dept. of Manpower Affairs,* 388 A.2d 516, 519 (Me. 1978). On appeal, the court will not disturb a finding of unreasonable behavior "if the Commission [could have] justifiably determine[d] that the employee's conduct was of a type, degree, or frequency that was so violative of the employer's interests that it may reasonably be deemed tantamount to an intentional disregard of those interests." *Forbes-Lilley*, 643 A.2d at 379 (quoting *Sheink v. Maine Dept. of Manpower Affairs*, 423 A.2d 519, 522 (Me. 1980)) (alterations in the original).

4

Here, the Commission had support in the record on which to base its factual findings, and any inconsistencies in the record are to be resolved by the Commission as the factfinder. *Bean*, 485 A.2d at 634. The Commission is in the best position to determine the Petitioner's credibility. *See Cotton v. Maine Employment Sec. Comm'n*, 431 A.2d 637, 640 (Me. 1981). Also, the burden rests with the Petitioner to prove that "no competent evidence supports the [agency's] decision and that the record compels a contrary conclusion." *Bischoff*, 661 A.2d at 170.

Petitioner represented that his brother was in "regular communication" with the employer. (R. 45) Petitioner presented evidence of the number of times the Petitioner's brother called the employer, as well as the substance of those phone calls. (R. 102, 104) The employer's evidence differed. (R. 88, 100) In the Commission's view of the evidence and testimony, it reached an appropriate conclusion that the brother called twice, once on July 13 when the Petitioner was incarcerated, and once July 17 when the employer decided to terminate Petitioner's employment. The Petitioner has not proven that no competent evidence supports the Commission's conclusion, and therefore the Court must uphold the Commission's characterization of that evidence.

In addition, the Commission "justifiably determine[d] that the employee's conduct was of a type, degree, or frequency that was so violative of the employer's interests that it may reasonably be deemed tantamount to an intentional disregard of those interests." *Forbes-Lilley*, 643 A.2d at 379. For three days, Petitioner did not appear at work nor further apprised the employer of when he could expect to return. Hence, the employer decided to terminate him for his inability to work his scheduled shifts. The Commission's conclusion that Petitioner's acts or omissions amounted to "misconduct" accords with the law. Furthermore, closely analogous case law does not give the Court pause.

5

The Petitioner's case is distinguishable from a Superior Court decision in *JMC Corp. v. Maine Unemployment Ins. Comm'n*, 2002 Me. Super. LEXIS 56, in which the Court found no "misconduct" on the part of the employee. The employee, a truck driver/common laborer, was arrested for operating under the influence, and faced a suspension of his driver's license. The employer did not fire the employee, but directed him to find duties in the company apart from truck driving. The employer told the employee to "stay in touch." The employee followed his employer's instructions, and "for countless days, [the employee] called and left messages for his employer. It was the employer...who did not make the effort to take, or return, the phone calls." *Id.* at 14. On these facts, the court found that the Commission correctly found that the employee did not engage in "misconduct" as defined by the statute. Because Mr. Asselin's efforts do not compare to the employee's efforts in *JMC Corp.*, the Court finds that case distinguishable.

Mr. Asselin's case is also distinguishable from a recent Superior Court decision in *Fountain v. Maine Unemployment Ins. Comm'n*, 2013 Me. Super. LEXIS 167, which addressed the identical issue of whether an employee who had been arrested and subsequently fired by his employer was fired for "misconduct." There, the employee was fired after arriving six hours late to a shift after having been arrested. The employee had tried in good faith to inform his employer of his impending tardiness in accordance with the employer's absence policy. And only once prior in his employment history was the employee was tardy. Viewing the evidence objectively, the court concluded that the employee's actions did not amount to "misconduct" tantamount to an intentional disregard of the employer's interests. Rather, the "impact on the employer in this case would be the same as that created by an employee who decided not to show up for work because of a disruption in daycare, or because they simply forgot or lost track of a scheduled shift." *Id.* at *13–14. Consequently, the court concluded that the record evidence did not support

6

the Commission's finding of "misconduct," and ordered that the employee receive unemployment benefits.

The Commission in Petitioner Asselin's case addressed the *Fountain* case and nevertheless determined that "*Fountain*...does not stand for the proposition that a claimant can fail to appear at work for four consecutive days and avoid a finding of misconduct." (Commission decision at 5). The Commission did not err in so viewing the law. An employee in the Petitioner's shoes may indeed commit "misconduct" when he does not report to work and does not sufficiently notify his employer of his absence, and the Commission's conclusion to this effect is justified. As opposed to *Fountain*, and slightly adapting own words, this Court notes that "the impact on [Petitioner Asselin's employer is *not*] the same as that created by an employee who decided not to show up for work because of a disruption in daycare, or because they simply forgot or lost track of a scheduled shift." 2013 Me. Super. LEXIS 167, *13–14. Rather, Petitioner missed three full days of work. Accordingly, this Court concludes that the law supports the Commission's conclusion that the Petitioner was terminated for "misconduct." 26 M.R.S. § 1043(23); *Forbes-Lilley*, 643 A.2d at 379.

In sum, the Court finds no basis on which to overturn the Commission's decision finding that the employer demonstrated that the Petitioner's objective conduct manifested a disregard for a material interest of the employer, such that he was terminated for "misconduct" under 26 M.R.S. §§ 1043(32) and 1193(2). Even if this Court entertained the belief that an employee's single phone call to an employer that he will miss work for an indefinite time is sufficient to absolve the employee of "misconduct," this Court "may not substitute their judgment for that of the agency merely because the evidence could give rise to more than one result." *Gulick*, 452

A.2d at 1209. Accordingly, the Court affirms the Commission's conclusion that the Petitioner was discharged for misconduct related to his work.

Accordingly, the court orders that the appeal is DISMISSED. The decision of the Maine Unemployment Insurance Commission dated July 9, 2014 is UPHELD.

The clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 6/24/15

MaryGay Kennedy
Justice, Superior Court

Action:   80C Appeal


Michael Asselin                          vs.          Unemployment Insurance Commission

---

Plaintiff's Attorney                                      Defendant's Attorney

David Sherman, Jr., Esq.                              Nancy Macirowski, Esq.
Drummond Woodsum                                 Asst Attorney General
84 Marginal Way Ste 600                             6 State House Station
Portland, ME 04101                                   Augusta ME  04333

Date of Entry

---

| July 29 | Received 07-29-14:<br>Petition for Review of Final Agency Action 80C filed. |
| " " | Received 07-29-14:<br>Application to Waive Payment of Filing Fee filed with financial affidavit.<br>No action taken.  The is no filing fee for Unemployment appeals. |
| Aug 7 | Received 08-07-14:<br>Entry of Appearance of Nancy Macirowski, Esq. AAG for the Respondent. |
| Sept 2 | Received 09-02-14:<br>Certified Record filed. |
| Sept 2 | On 09-02-14:<br>Notice and briefing schedule filed.<br>Petitioner's brief is due on or before October 14, 2014.<br>Copies to parties. |
| Oct 14 | Received 10-14-14:<br>Petitioner's Brief filed. |
| Nov 14 | Received 11-13-14:<br>Brief of Respondent Maine Unemployment Insurance Commission filed. |
| Dec 1 | Received 11-26-14:<br>Reply Brief of Petitioner filed. |
| Feb 4 | On 02-04-15:<br>Hearing held on Appeal.<br>Matter taken under advisement.<br>Kennedy, J. Presiding, Courtroom 2 8:45 David Kallin, Esq. for Petitioner,<br>Nancy Macirowski, Esq. for Respondent. |