STATE OF MAINE                                      SUPERIOR COURT
                                                    CIVIL ACTION
KENNEBEC, ss.                                       DOCKET NO. AP-02-21
                                                    DHM-KEN - 12/13/2002

DONNA SMITH,

        Petitioner

    v.                                              **DECISION AND ORDER**

MAINE UNEMPLOYMENT                      DONALD L. GARBRECHT
INSURANCE COMMISSION,                       LAW LIBRARY

        Respondent                             JAN 7 2003


        This matter is before the court on petitioner's M.R. Civ. P. 80C Petition for

Review of the Maine Unemployment Insurance Commission's ("respondent" or

"Commission") decision denying and disqualifying her from receiving Unemployment

Insurance benefits.

        From April 1999 until November 2001, petitioner was employed as a

dockworker for Inland Seafood. Petitioner's daughter worked for one of Inland

Seafood's business competitors. In November 2001, petitioner reserved ferry space on

the Vinalhaven Ferry for her daughter's firm to ship products off the island. Petitioner

reportedly made the reservation because her daughter was unavailable at the time, and

petitioner was at the wharf on other personal business. Petitioner was not on duty for

Inland Seafood when she made the reservation. Inland Seafood learned of the incident,

and terminated petitioner's employment. Inland Seafood maintains that its decision to

terminate petitioner was based on a rule that its employees are not permitted to work

for competing firms in their off hours. Petitioner applied to respondent for benefits

under the Maine Employment Security Act. Her request for benefits was denied

                                        1

because respondent maintained that petitioner was terminated for misconduct as defined by the Employment Security Act. 26 M.R.S.A. § 1040 *et seq.*

In its decision, respondent determined that petitioner was discharged for misconduct within 26 M.R.S.A. §§ 1043 (23) and 1193 (2), thereby disqualifying petitioner for unemployment insurance. The issue is whether petitioner was properly denied unemployment insurance under the circumstances of her termination.

Petitioner makes three contentions: (1) the employer's rule forbidding its employees from working for competing firms is unreasonable and against public policy; (2) respondent erred as a matter of law when it found that petitioner's conduct, that occurred while she was off-duty, manifested a disregard for a material interest of her employer; and (3) petitioner's actions in assisting her daughter were not unreasonable under the circumstances.

When the decision of an administrative agency is appealed pursuant to M.R. Civ. P. 80C, this court reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence." *Centamore v. Dep't of Human Services*, 664 A.2d 369, 370 (Me. 1995). The Superior Court will reverse or modify an administrative decision only if the administrative findings, inferences, or conclusions are: "(1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by bias or error of law; (5) Unsupported by substantial evidence on the whole record; or (b) Arbitrary or capricious or characterized by abuse of discretion." *Hale-Rice v. Maine State Retirement Sys.*, 1997 ME 64, ¶ 8, 691 A.2d 1232, 1235 (quoting 5 M.R.S.A. § 11007 (4)(C) (1989)). When the dispute involves an agency's interpretation of a statute administered by it, the agency's interpretation, although not conclusive, is entitled to

2

great deference and will be upheld unless the statute plainly compels a contrary result. *Centamore v. Department of Human Services*, 664 A.2d 369, 370-371 (Me. 1995). Review will be limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." *Imagineering, Inc. v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991). "Inconsistent evidence will not render an agency decision unsupported." *Seider v. Bd. Of Exam'r of Psychologists*, 2000 M E 206, ¶ 9, 762 A.2d 551, 555 (citing *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261). "The burden of proof rests with the party seeking to overturn the agency's decision… and that party must prove that no competent evidence supports the Board's decision." *Id.* (citations omitted).

In this case, the issue is whether petitioner committed misconduct so as to be disqualified from receiving unemployment benefits after termination from her employment. Here, the court's review of the Commission's order is limited to a determination of whether competent evidence supports the Commission's findings and whether the Commission applied the correct law to its findings. *Forbes-Lilly v. Maine Unemployment Ins. Comm'n*, 643 A.2d 377, 378 (Me. 1994) (citing *Wellby Super Drug Stores, Inc. v. Maine Unemployment Ins. Comm'n*, 603 A.2d 476, 478 (Me. 1992).

Generally, an individual discharged from employment is eligible for unemployment compensation pursuant to the eligibility requirements of 26 M.R.S.A. § 1192. An exception, however, is when an employee is discharged for misconduct connected with her employment. 26 M.R.S.A. § 1193 (2). Employment Security Law defines misconduct as follows:

> [A] culpable breach of the employee's duties or obligations to the employer or a pattern of irresponsible behavior, which in either case manifests a disregard for a material interest of the employer. This

3

definition relates only to an employee's entitlement to benefits and does not preclude an employer from discharging an employee for actions that are not included in this definition of misconduct. A finding that an employee has not engaged in misconduct for the purposes of this chapter may not be used as evidence that the employer lacked justification for the discharge.

26 M.R.S.A. § 1043 (23). In *Moore v. Maine Dep't. of Manpower Affairs*, 388 A.2d 516, 519 (Me. 1978), the court specified that an employee's violation of an employer's rule is not misconduct per se within the meaning of the statute. Rather, there is a two-prong test to determine when misconduct has occurred. The Commission must determine:

1. Whether the employer's rule or expectation was reasonable; and
2. Whether the employee's conduct in relation to the employer's rule was, upon an objective standard, unreasonable under the circumstances of the case.

*Id.* *See also Forbes-Lilly v. Maine Unemployment Ins. Comm'n*, 643 A.2d 377, 379 (Me. 1994). *Moore* also specifies that this ad hoc approach to determine disqualification for benefits permits the Commission to attach different weight to different violations, depending on the magnitude of the violation and whether it is willful or results from misunderstanding or carelessness. *Id.* The employee's behavior is measured as the objective manifestation of intent. *Id.* (citing *Sheink v. Maine Dept. of Manpower Affairs*, 423 A.2d 519, 522(Me. 1980)). There is no requirement of a showing that the employee had a subjective intent to disregard the employer's interests. *Thompson v. Maine Unemployment Ins. Comm'n*, 448 A.2d 905, 908 (Me. 1982).

There is sufficient evidence on the record for the Commission to have found that Inland Seafood's rule or expectation of petitioner was reasonable. Inland Seafood maintained a rule prohibiting its employees from working for a competitor while employed at Inland Seafood. Inland Seafood is a wholesale seafood dealer located on a coastal island. Crucial to its business is prompt, regular delivery of the seafood or bait

4

to and from the island to the mainland. In order to insure reliable delivery, seafood dealers compete for a limited number of "priority" ferry passes to transport their products from the island to the mainland. The priority passes assure a slot on a particular ferry at a particular time and same-day return; a representative of a seafood dealer is often at the ferry terminal as early as 2:00 a.m. to wait in line for a pass. There are five seafood dealers who may be competing for priority passes in one day. Inability to obtain one of the passes has serious consequences for a seafood company, such as failure to deliver products to customers on the mainland or failure to get a truck on and off the island within one day. Without the priority pass, it is very difficult to get a seafood delivery truck on and off the island within one day. Petitioner did not sign a contract regarding Inland Seafood's rule; yet, Inland Seafood maintained the rule and the expectation. Also, the rule was made clear to petitioner and petitioner acknowledged that she would no longer violate the rule, as had previously occurred.

Petitioner argues that Inland Seafood's rule or expectation prohibiting simultaneous employment with a competitor is unreasonable and against public policy because it constitutes a non-competition agreement. However, non-competition agreements that have been clearly determined as against public policy are agreements between an employee and his *former* employer. In fact, all the cases cited by petitioner, as well as further research, deal with non-competition agreements with a former employer. There, non-competition agreements with a *former* employer are often (not always) viewed as against public policy because of their high potential for restricting an employee's capacity to support himself in his chosen occupation. *See Chapman & Drake v. Harrington*, 545 A.2d 645, 646-47 (Me. 1988); *Lord v. Lord*, 454 A.2d 830, 834 (Me. 1983); *Roy v. Bolduc*, 34 A.2d 479, 481 (Me. 1943). The cases do not address a requirement by a

5

current employer that an employee refrain from working for a competing employer at the same time, as in the present case.

Thus, there is sufficient evidence on the record for the Commission to determine that Inland Seafood's rule or expectation was reasonable.

There is also sufficient record evidence for the Commission to determine that petitioner's violation of Inland Seafood's rule or expectation was unreasonable under the circumstances. Petitioner was specifically informed on two prior occasions that she was not to stand in line to obtain a priority ferry pass for a competing company. Petitioner even stated to her employer that she would no longer try to obtain a priority for another company. Thus, petitioner's behavior was unreasonable because petitioner was well aware of her employer's expectation; had assured the employer she would not pursue a priority pass for a competitor; and did so nonetheless. Petitioner even requested of her colleague, who found her trying to obtain a priority for the competition, that she not inform their employer of petitioner's actions.

Petitioner contends that she was "aiding" her daughter, who was unable to obtain the priority herself for her employer. Yet, it is also on the record that petitioner obtained the priority for "extra time and extra money." Either way, the employee's behavior is measured as the objective manifestation of intent. *Forbes-Lilly v. Maine Unemployment Ins. Comm'n*, 643 A.2d at 379 (citing *Sheink v. Maine Dept. of Manpower Affairs*, 423 A.2d at 522). There is no requirement of a showing that the employee had a subjective intent to disregard the employer's interests. *Thompson v. Maine Unemployment Ins. Comm'n*, 448 A.2d at 908. Therefore, looking at petitioner's behavior alone to determine her intent, her actions intentionally disregarded her employer's interests in obtaining a priority pass and his rule or expectation that she not obtain a

6

priority for a competitor.

For the reasons stated above, the entry will be:

The decision of the Maine Unemployment Insurance Commission in the matter of Donna J. Smith, No. 02-C-00295, dated February 22, 2001, is AFFIRMED.

Dated: December____13____, 2002

Donald H. Marden
Justice, Superior Court

Date Filed __3/21/02__    __Kennebec__    Docket No. __AP02-21__
County

Action __80C Appeal__

# J. MARDEN

Donna Smith                                    Maine Unemployment
                                  vs.          Insurance Commission

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Matthew Dyer, Esq.<br>Pine Tree Legal Assistance<br>PO Box 2429<br>Augusta ME 04338 | Elizabeth Wyman, AAG<br>Pamela Waite, AAG<br>6 State House Station<br>Augusta ME 04333-0006 |

| Date of Entry | |
|---|---|
| 3/21/02 | Petition for Review, filed. s/M. Dyer, Esq.    Notice of Case Filing issued to parties. |
| 3/27/02 | Letter of Appearance of Elizabeth Wyman, AAG on behalf of Maine Unemployment Insurance Commission, filed. s/E. Wyman, AAG |
| 4/22/02 | Administrative Record, filed. s/Wyman, Esq.<br>Notice of briefing schedule mailed to attys of record. |
| 6/3/02 | Brief of Petitioner, filed. s/Jack Comart, for Matt Dyer, Esq. |
| 7/10/02 | Brief of Respondent Maine Unemployment Insurance Commission, filed. s/E. Wyman, AAG    (filed 7/5/02) |
| 7/10/02 | Petitioner's Reply Brief, filed. s/M. Dyer, Esq. |
| 11/17/02 | Hearing had on Appeal on 11/26/02, Hon. Donald Marden, Presiding. Matthew Dyer and Elizabeth Wyman present oral arguments to the court. Court takes matter under advisement. |
| 12/16/02 | DECISION AND ORDER, MARDEN, J.    (dated 12/13/02)<br>The decision of the Maine Unemployment Insurance Commission in the matter of Donna J. Smith, No. 02-C-00295, dated February 22, 2001, is AFFIRMED.<br>Copies mailed to attys of record.<br>Copies mailed to Deborah Firestone, Garbrecht Library and Goss. |
| 12/21/02 | Notice of removal of record mailed. |